IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FIDEL MARTINEZ SANTIAGO,** ) | CV F 02-5348 OWW WMW HC |
| ) | |
| Petitioner, ) | **FINDINGS AND** |
| ) | **RECOMMENDATIONS RE** |
| v. ) | **PETITION FOR WRIT OF** |
| ) | **HABEAS CORPUS** |
| **JOE McGRATH, WARDEN,** ) | |
| ) | [Doc. 38] |
| Respondent. ) | |
| _____ ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302.

## PROCEDURAL HISTORY

On February 23, 1999, a Madera County Superior Court jury found Petitioner guilty of the second degree murder of Rafael Garcia (count 1) and the attempted murder of Armando Negrete (count 2), but found that the attempted murder was not willful, deliberate and premeditated. The jury also found true that Petitioner personally used a firearm in the

commission of both crimes in violation of Penal Code Section 120.53, subdivision (d). On March 16, 1999, the court sentenced Petitioner to serve an aggregate term of 72 years to life in prison. The court further ordered Petitioner to pay restitution to Garcia's brother and father.

Petitioner filed an appeal with the California Court of Appeal for the Fifth Appellate District ("Court of Appeal") from the judgment of conviction and the sentence, from the court's January 21, 1999 order denying *Brady* discovery, and from the restitution order. The Court of Appeal ordered the appeals consolidated. In an unpublished decision entered April 18, 2001, the Court of Appeal found no error, and affirmed the judgment and the restitution order. The California Supreme Court denied Petitioner's petition for review on July 11, 2001.

On March 13, 2002, Petitioner filed a petition for writ of habeas corpus in this court. On March 25, 2002, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. The court denied the petition on July 17, 2002, with a citation to In re Swain, 34 Cal.2d 300, 304 (1949). On April 16, 2002, Petitioner filed a second petition for writ of habeas corpus in the California Supreme Court. The court denied the petition on July 17, 2002, with citations to In re Waltreus, 62 Cal.2d 218 (1965); In re Clark, 5 Cal.4th 750 (1993); and In re Lindley, 29 Cal.2d 709 (1947). On June 13, 2002, Petitioner filed a third petition for writ of habeas corpus in the California Supreme Court. The court denied this petition on July 17, 2002, with citations to In re Swain, 34 Cal.2d at 304 and In re Clark, 5 Cal.4th 750.

On October 15, 2002, Respondent filed a motion to dismiss the petition for writ of habeas corpus in this court for failure to fully exhaust remedies in California state court. In response, Petitioner moved to dismiss ground one of his petition, requesting a staying of the proceedings in order to return to state court to exhaust his judicial remedies. The court granted Petitioner's motion.

Petitioner then filed a series of petitions for writ of habeas corpus in the California state courts. This process ended with the California Supreme Court's denial on January 22, 2004, of Petitioner's petition with citations to In re Clark, 5 Cal.4th 750; In re Robbins, 18 Cal.4th 770, 780 (1998); In re Swain, 34 Cal.2d 300, 304; and People v. Duvall, 9 Cal.4th, 464, 474 (1995).

On February 18, 2004, this court lifted the order holding the case in abeyance following a status report which indicated that Petitioner had exhausted his claim in the California Supreme Court. On April 21, 2004, Petitioner filed his second amended petition, the petition now the court. Petitioner claims that his Fourteenth Amendment right to due process was violated because the police failed to test his blood sample for alcohol content and that the prosecution committed misconduct by failing to notify the defense that victim Armando Negrete left the country, thereby violating the Sixth Amendment and Petitioner's right to due process.

## FACTUAL BACKGROUND

The Court finds the Court of Appeal correctly summarized the facts in its May 30, 1997 opinion. Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District. See Unpublished Opinion in Case Number F032870 and 034948.

## LEGAL STANDARD

JURISDICTION

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 120 S.Ct. 1495, 1504 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. In addition, the conviction challenged arises out of the Madera County Superior Court, which is located within the

jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed on March 13, 2002, after the enactment of the AEDPA, thus it is governed by its provisions.

STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123 S.Ct. 1166, 1173 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its

4

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1174 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

Exhaustion

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991); Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state

5

court with the claim's factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis). Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66, 115 S.Ct. at 888; Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998).  For example, if a petitioner wishes to claim that the trial court violated his due process rights "he must say so, not only in federal court but in state court." Duncan, 513 U.S. at 366, 115 S.Ct. at 888.  A general appeal to a constitutional guarantee is  insufficient to present the "substance" of such a federal claim to a state court.  See, Anderson v. Harless, 459 U.S. 4, 7, 103 S.Ct. 276 (1982) (Exhaustion requirement not satisfied circumstance that the "due process ramifications" of an argument might be "self-evident."); Gray v. Netherland, 518 U.S. 152, 162-63, 116 S.Ct. 1074 (1996) ("a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.").

   In instances where the California Supreme Court's opinion is summary in nature, this court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).  However, when there is no state court decision articulating a rationale, a reviewing court "has no basis other than the record" for determining whether the state court decision merits deference under 28 U.S.C. 2254(d)(1). Delgado, 223 F.3d at 981-82. In such circumstances, a

reviewing court can still apply the "objectively reasonable" standard of *Williams* to the state court decision. This does not mean *de novo* review by the federal court, but rather "an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law." Thomas v. Hubbard, 273 F.3d 1164, 1170 (9th Cir.2001); Bailey, 263 F.3d at 1028; Delgado, 223 F.3d at 982.

## DISCUSSION

Failure to Analyze Material Evidence

      Petitioner contends that he was deprived of his Fourteenth Amendment right to due process because of the intentional, bad faith loss or destruction of material evidence by the prosecution.  Specifically, Petitioner claims in his petition that the prosecution intentionally lost or destroyed a vial of his blood, which could have been analyzed to show the level of alcohol in his blood at the time of his arrest.  Petitioner argues that evidence that he was intoxicated at the time of the crime would have been exculpatory, because murder is a specific intent crime.  In his traverse, Petitioner states his contention as, "[t]he prosecution in Petitioner's trial violated Petitioner's 14th Amendment Due Process, by not analyzing the alcohol in Petitioner's blood to determine the level of it present in Petitioner's blood."

      Respondent disputes this contention,  admitting that it has been exhausted through presentation to the California Supreme Court in Petitioner's April 10, 2003 petition for writ of habeas corpus.  Respondent explains that he does not seek dismissal of this claim under the procedural default doctrine, but rather seeks denial of the claim on the merits.

      Respondent argues, relying on Arizona v. Youngblood, 488 U.S. 51, 58 (1988), that the failure of police to preserve potentially useful evidence is not a denial of due process of law unless the defendant can show bad faith on part of police.  He argues that Petitioner cannot make that required showing and so cannot prevail on this claim.

      The court must agree with Respondent.  In Youngblood, the Court held that "unless a criminal defendant can show bad faith on the part of police, failure to preserve potentially

7

useful evidence does not constitute a denial of due process of law." Id .at 58.  In applying this standard to the facts of the case, the Court found that  no information had been concealed from the defendant at trial, and that the evidence, such as it was, was made available to the defendant's expert who declined to perform any tests on it.  Id. at 58.  The court further concluded, as had the Court of Appeals, there was no suggestion of bad faith on the part of the government.   The Court concluded, therefore, that there was no violation of the due process clause.  Id.

As Respondent argues, in the present case Petitioner was aware of the existence of the blood sample, but never sought to have it analyzed.  Petitioner does not claim that any evidence was concealed from him, and Petitioner can point to no bad faith on the part of the police.  As Respondent stresses, Detective Benabente testified at trial that he simply did not think the blood samples were pertinent to the case.   Although Petitioner argues repeatedly that the prosecutor had a duty to have all of the evidence analyzed, this is simply not the law.  Further, although not necessary to the analysis, the court notes that extensive testimony was presented at trial that Petitioner was intoxicated immediately after the shootings were committed.  Therefore, evidence of this fact was placed before the jury, and Petitioner's claim that analysis of the blood sample would have changed the outcome of the trial is pure speculation.

Based on the above, the court finds that Petitioner has failed to demonstrate a due process violation in regard to the prosecution's loss of or failure to analyze the blood sample.  Petitioner has thus not carried his burden of showing that the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d)  Accordingly, the court must conclude that this claim presents no basis for habeas corpus

relief.

Failure to Notify Petitioner Regarding Witness

Petitioner contends that the prosecution committed misconduct in failing to notify him that a witness had fled the country. He claims that this failure resulted in a violation of his Sixth Amendment confrontation right and this Fourteenth Amendment due process right. Petitioner raised this claim on direct appeal, but did not include it in his petition for review before the California Supreme Court. Petitioner did present this claim to the California Supreme Court in his petition for writ of habeas corpus filed April 16, 2002. Respondent disputes this claim, explaining that he does not seek dismissal of the claim based on procedural default, but rather seeks denial of the claim on the merits.

The Court of Appeal explained the factual background of this claim as follows:

> On December 15, 1998, appellant informally requested discovery of statements and information on the current whereabouts of all percipient witnesses of the shooting, as well as records of any prior violence by Negrete and Garcia. On January 4, 1998, appellant's counsel asked the prosecution to obtain fingerprints to determine Negrete's true identity, but was informed that Negrete had gone to Mexico and was not available. On January 12, 1999, appellant filed a motion for a pretrial discovery compliance order for production of such material. Appellant again asked for statements and the current whereabouts of all percipient witnesses, and information regarding prior violent acts of "complaining witness" Negrete and the deceased Garcia. Appellant specifically requested the court order the prosecution to investigate to further determine the true identity of the person known as Armando Negrete, including the taking of fingerprints, based on Sandy Manoz's statement to Detective Padgett that she overheard Negrete give a false name to the officers at the crime scene when he was being loaded into the ambulance, although she did not know Negrete's true name and only knew him by the name "Chiva."
> 
> On January 20, 1999, the prosecution filed an opposition to this motion. With regard to Negrete's whereabouts, the prosecution stated they provided appellant's counsel with Negrete's address and telephone number during the initial discovery stage. On November 18, 1998, additional discovery was provided to appellant's counsel. Sometime thereafter, the prosecution learned that Negrete had returned to Mexico for the holidays, and informed appellant's counsel of this. On December 15, 1998, the prosecutor received a letter from the Madera County Victim Witness Services Center, which provided two telephone numbers for Negrete in Mexico. One number belonged to a family member by the name of Mario Negrete Duarte, and the other number was a number shared by all the people in the small village where Negrete was staying.
> 
> With regard to Negrete's prior acts of violence, the prosecution responded that they did not intend to call Negrete as a witness, therefore he was not a "complaining witness," and that after conducting a reasonable search, no arrest or conviction records had been found for Negrete. The prosecution explained that Officer Beaty

9

>obtained the first name of "Armando" at the crime scene, and the hospital later obtained the last name of "Negrete." The prosecution asked an individual at Victim Witness Services to obtain some form of identification for Negrete, and was provided with a labor contractor's identification card and a check stub, both of which bore the name Armando Hernanez Negrete. On November 24, 1998, the Madera Police Department reported to the prosecution that a search of the records of the Department of Motor Vehicles, Immigration and Naturalization Service, and Department of Justice on Negrete did not reveal any match. On January 19, 1999, the prosecution requested the Madera County Department of Corrections conduct a record search on Negrete and any possible name combinations, but the search did not produce any matches.
>
>   On January 21, 1999, the trial court held a hearing on appellant's motion. Appellant's counsel requested that the trial court order the prosecution to obtain and run a set of fingerprints for Negrete, who was then believed to be in Mexico. Appellant's counsel's argument was based on Sandy Manoz's statement to Detective Padgett that she knew Negrete as "Chivo," and although she did not know Negrete's true name, she had overheard Negrete provide the officers a false name. Appellant's counsel further argued that the prosecutor had failed to fully investigate Negrete to determine if he had a prior criminal record, and this constituted a *Brady* violation.
>
>   In response, the prosecution state that Negrete had been transferred from UMC to a hospital in Exeter, and then moved from Exeter to a convalescent hospital in the Los Angeles area, and that he had apprised appellant's counsel of these moves. The prosecutor further stated that he gave appellant's counsel a phone number where he could reach Negrete's relatives. When the prosecutor learned that Negrete was going to be leaving the country, he told appellant's counsel and gave him the telephone numbers obtained from Victim Witness Services. The prosecutor also reiterated that he had found no prior criminal record for Negrete after conducting a diligent search.
>
>   The trial court found appellant's motion untimely. It further found no reliable evidence that Negrete had provided a false name. In addition, the trial court concluded that the prosecution had been reasonably diligent in its efforts to keep appellant's counsel apprised of Negrete's whereabouts and to accommodate appellant's informal December 15, 1998, request, and the prosecution had no reason to investigate Negrete prior to December 15. The court also found that it was "very unreasonable" to force the prosecution to expend funds to investigate Negrete outside this country. Consequently, the trial court denied appellant's motion.

Unpublished Opinion in Case Numbers F032870 and F034948, 17 - 19.

Although Petitioner frames his Sixth Amendment claim in terms of the Confrontation Clause, under the facts of this case any Sixth Amendment claim by Petitioner must be made in terms of compulsory process. See U.S. Const. amend. VI (guaranteeing a criminal defendant the right "to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor."). The purpose of the Confrontation Clause is to ensure to criminal defendants the opportunity to cross-examine witnesses testifying against them. See Delaware v. Van Arsdall, 475 U.S. 673, 678-79

10

(1986).  Armando Negrete did not testify at Petitioner's trial, thus the Confrontation Clause does not apply.  Both on direct appeal and in his petition for writ of habeas corpus, Petitioner framed his contention in terms of the Compulsory Process clause.  This court will therefore address his Sixth Amendment claim based on the same clause.

When a defendant asserts that the government somehow interfered with his right to compulsory process, he must show that the government acted in bad faith and that the testimony of the absent witness would have been material and favorable to his defense in order to show error of constitutional dimension.  United States v. Dring, 930 F.2d 687, 693, 694 n. 7 (9th Cir. 1991).  In this case, the Court of Appeal concluded that the facts of the case showed no misconduct on the part of the prosecution.  Unpublished Opinion in Case Numbers F032870 and F034948, 21.  It found that the prosecutor's actions or inaction did not cause Negrete to leave the country and was not the cause of Negrete's unavailability.  Id. at 27.  Rather, "the cause of Negrete's unavailability was defense counsel's failure to subpoena Negrete when it had at least six months to do so  - from May 1998 to when he left for Mexico in December 1998." Id. at 24 - 25.

As Respondent argues, factual findings by the state courts are presumed to be correct under 28 U.S.C. Section 2254(d)(2)(e)(1).  Petitioner does not dispute these facts, but asserts simply that the prosecution failed to notify the defense that Negrete fled the country.  This court finds that under the facts as determined by the state courts, there is no basis for this claim and Petitioner therefore cannot establish that the prosecution acted in bad faith.  Accordingly, this court concludes that Petitioner has not carried his burden of demonstrating that the state courts' adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  This claim thus provides no basis for habeas corpus

relief.

Based on the foregoing, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED and that judgment be entered for Respondent.

These Findings and Recommendation are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 13, 2005**             /s/  William M. Wunderlich
mmkd34                                 UNITED STATES MAGISTRATE JUDGE